*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: February 11, 2010                    502299

_____

DANIEL E. McAULIFFE,
                Respondent,

     v                                          MEMORANDUM AND ORDER

MARIA D. McAULIFFE,
                Appellant.
_____

Calendar Date:  October 20, 2009

Before:  Mercure, J.P., Kavanagh, Stein, McCarthy and Garry, JJ.

_____

      Robert M. Cohen, Ballston Lake, for appellant.

      Maynard, O'Connor, Smith & Catalinotto, L.L.P., Albany (Lia B. Mitchell of counsel), for respondent.

      Suzanne L. Latimer, Law Guardian, Latham.

_____

Garry, J.

      Appeals (1) from a judgment of the Supreme Court (Hall, J.), entered December 27, 2006 in Saratoga County, ordering, among other things, equitable distribution of the parties' marital property, upon a decision of the court, (2) from an order of said court, entered July 13, 2007 in Saratoga County, which, among other things, partially granted plaintiff's motion for modification and enforcement of the judgment of divorce and directed the parties to execute bargain and sale deeds to certain real property, and (3) from an order of said court, entered January 29, 2008 in Saratoga County, which, on the court's own motion, directed the parties to execute said deeds.

-2-                          502299

Plaintiff (hereinafter the husband) and defendant (hereinafter the wife) were married in 1976. They have two sons (born in 1985 and 1993) and a daughter (born in 1988). The husband has an engineering degree and has been regularly employed since early in the marriage. The wife holds an undergraduate degree and worked in administrative and sales positions before leaving full-time work to care for the children in approximately 1992. Thereafter, she worked part time as a self-employed consultant and trainer. Both parties acquired their degrees during the marriage.

In January 2005, the husband commenced this action for divorce. The wife answered and counterclaimed for divorce and, among other things, sought maintenance and child support. After a lengthy trial, a judgment of divorce was entered in which Supreme Court awarded the parties joint custody of the minor children, and the husband was directed to pay $200 weekly in maintenance until 2016 and $570 weekly in child support. The equitable distribution award, among other things, directed the sale of the parties' real estate – consisting of the marital residence, two rental duplexes, and a vacant lot – and the equal division of the net proceeds after payment of certain debts and expenses.

Due to the parties' failure to divide the marital estate as directed, further litigation ensued, and an order was entered in July 2007 directing the husband to deed his interest in the marital residence and vacant lot to the wife, and directing her to deed her interest in the rental properties to him. A subsequent order in January 2008 set a new deadline for compliance. The wife now appeals from the child support, maintenance, and equitable distribution awards as set forth in the December 2007 judgment of divorce and both postjudgment orders.

We agree with the wife's contention that the record does not support the earning capacity that Supreme Court attributed to her in determining certain portions of the support and equitable distribution awards. In imputing income, a trial court may base its determination on "past employment experience, future earning capacity, and/or the payment of personal expenses from business

-3-                    502299

accounts" (Bean v Bean, 53 AD3d 718, 722 [2008]). The court imputed income of $120,000 annually to the husband and $50,000 annually to the wife. While the record of the husband's 20-year history of substantial earnings in computer sales and services supports the court's conclusion as to his continuing earning capacity,[1] it does not provide similar "sound and substantial support" (id. at 722) for the amount of income imputed to the wife.

At the time of trial, the wife was not employed outside the home. However, Supreme Court rejected her claim that she was completely incapable of gainful employment and imputed income to her based upon her employment history, salary potential, and its assessment of her capabilities. Notably, there is no support in the record for the court's findings that the wife had substantial income in at least two jobs after leaving full-time employment and that she earned more than $100,000 in 2002 from an "annual contract" with New York State. The record reveals instead that the wife began working in sales and account management positions in about 1980, with earnings that increased from $18,831 in 1981 to $51,300 in 1990 and reached a high point of $91,939 in 1991. Thereafter, she left her employment to care for her children. She testified that in the subsequent years she sought facilitation and consulting contracts through her own company, but this effort was, for the most part, unsuccessful. Her Social Security and tax records support this testimony, showing that she had no earnings in any year after 1993 except 1995, when she earned $2,344, and 2004, when she earned approximately $28,000.[2]

---

[1] The amount of income attributed to the husband was lower than his actual earnings in the years immediately preceding the divorce based on his testimony – which Supreme Court found credible – that the loss of a significant contract in 2005 had caused a decline in his earnings that was expected to continue.

[2] The wife testified that the 2004 earnings came from a four-month period during which she taught boating safety under a New York State certificate that was revoked by state officials in August 2004 because of her alleged failure to comply with certification requirements.

-4-                        502299

In analyzing her salary potential, Supreme Court relied on an expert opinion that the wife could earn $60,000 annually, set forth in a report by an evaluator appointed by the court to assess both spouses' enhanced earning capacities resulting from their degrees. However, that amount was not determined by the evaluator himself; instead, it was derived from a separate report prepared by Sheldon Grand of Forensic Rehabilitation Services. Grand did not testify, and his report is not in the record. The court-appointed evaluator's report merely quoted Grand's conclusion without setting forth any part of the factual foundation or calculations upon which it was based. "To be properly admitted, expert opinion evidence must generally be based upon facts either found in the record, personally known to the witness, derived from a 'professionally reliable' source or from a witness subject to cross-examination" (Brown v County of Albany, 271 AD2d 819, 820 [2000], lv denied 95 NY2d 767 [2000] [citation omitted]; see Hambsch v New York City Tr. Auth., 63 NY2d 723, 725-726 [1984]; accord O'Brien v Mbugua, 49 AD3d 937, 938 [2008]). It cannot be determined from this record whether Grand's opinion meets these requirements, precluding reliance on his assessment of the wife's salary potential (see Semans v Semans, 199 AD2d 790, 790-791 [1993], lv denied 83 NY2d 758 [1994]; Matter of Aetna Cas. & Sur. Co. v Barile, 86 AD2d 362, 364 [1982]).

When the amount of income imputed to a party has been improperly determined, we may impute the appropriate amount based on evidence in the record (see Blay v Blay, 51 AD3d 1189, 1192 [2008]). Here, we agree with Supreme Court's assessment that the wife is capable of gainful employment. However, as the court noted, it may reasonably be anticipated that she will require some time to reenter the job market and her income will continue to be lower than the husband's. Although the wife achieved significant earnings before 1993, her lack of meaningful earnings thereafter and the absence of any reliable evidence that she will be able to return to employment comparable to her prior work, or of the earning capacity of persons with similar educational and employment backgrounds, make it speculative to impute anything more than a minimal income to her (see Matter of Bianchi v Breakell, 23 AD3d 947, 949 [2005]; Alessi v Alessi, 289 AD2d 782, 783-784 [2001]). Given her age and health, we find that the

-5-                              502299

record does not support imputed income in excess of the applicable minimum wage (see Moffre v Moffre, 29 AD3d 1149, 1151-1152 [2006]; Matter of Bukovinsky v Bukovinsky, 299 AD2d 786, 787 [2002], lv dismissed 100 NY2d 534 [2003]), and we remit the matter for the determination of this amount and for recalculation of the husband's resulting child support obligation (see Moffre v Moffre, 29 AD3d at 1152; Milnarik v Milnarik, 23 AD3d 960, 963-964 [2005]). In this regard, we agree with the court that, given the disparity in the parties' incomes and the decrease in the children's standard of living caused by the dissolution of their parents' marriage, it is appropriate to subject all of the parties' combined income over $80,000 to the statutory percentage (see Domestic Relations Law § 240 [1-b] [c] [3]; Matter of Cassano v Cassano, 85 NY2d 649, 653-655 [1995]; Pulver v Pulver, 40 AD3d 1315, 1318 [2007]). The resulting award should be retroactive to the date of the wife's first application for child support, reduced by payments made (see Domestic Relations Law § 236 [B] [7] [a]; Carlson-Subik v Subik, 257 AD2d 859, 861 [1999]).

The wife further challenges Supreme Court's determinations with regard to payment of the children's college expenses and health insurance costs. The court's previous determination not to require the husband to pay a share of the college costs was based almost entirely on its conclusion that the wife had improperly excluded him from college decision-making. The appropriateness of such an award should have been determined by evaluating whether special circumstances exist, based on the parents' educational backgrounds, the children's academic abilities, and the husband's ability to pay (see Brough v Brough, 285 AD2d 913, 917 [2001]), and, if no such circumstances exist, as a matter of discretion based on all the circumstances, the children's best interests, and the requirements of justice (see Domestic Relations Law § 240 [1-b] [c] [7]; Brough v Brough, 285 AD2d at 917). However, based on all the circumstances, and particularly in view of the parties' extensive debt and obligations and their limited available resources, we decline to disturb the court's determination that the husband should not be required to pay a share of the children's college expenses. The court further directed the wife to pay a pro rata share of the children's health insurance. In view of the disparity in the

Case 09-90086-1-rel    Doc 12    Filed 02/17/10    Entered 02/19/10 10:15:46    Desc Main
Document      Page 6 of 10

-6-                         502299

parties' incomes, and as insurance is available through the husband's employment, we find that he should bear the full cost of the children's health insurance (see Domestic Relations Law § 240 [1] [c]; Recuppio v Recuppio, 246 AD2d 342, 344 [1998]).

Next, the wife challenges both the amount and duration of the maintenance award.  Initially, we disagree with her claim that Supreme Court gave inadequate consideration to the parties' predivorce standard of living (see generally White v White, 204 AD2d 825, 828 [1994], lv dismissed 84 NY2d 977 [1994]).  Although the court did not explicitly discuss the parties' standard of living in its maintenance analysis, the decision as a whole reflects the court's sharp awareness that the parties' financial distress at the time of trial would prevent both spouses and their children from returning to their former lifestyle in the near future, and the maintenance award was clearly crafted with this reality in mind.

Nonetheless, we find that the maintenance award must be reassessed.  "[T]he purpose of maintenance is to provide financial support for the recipient spouse while he or she gains the skills and employment necessary to become self-sufficient" (Dowd v Dowd, 58 AD3d 1057, 1058 [2009] [internal quotation marks and citations omitted]).  Although due deference must be accorded to Supreme Court's credibility determinations with regard to the wife's claimed economic needs and her assertion that she was incapable of gainful employment (see generally Evans v Evans, 55 AD3d 1079, 1081 [2008]; Nichols v Nichols, 19 AD3d 775, 777 [2005]), its analysis of the wife's earning capacity and of her credibility was affected by the same misunderstandings of her recent employment history set forth above relative to the imputation of income.  Because of these errors, the award must be modified (see Evans v Evans, 55 AD3d at 1082-1083).  Our authority in determining issues of maintenance is as broad as that of Supreme Court (see Redgrave v. Redgrave, 13 AD3d 1015, 1019 [2004]).  In view of our adjustment in the wife's imputed income and our consideration of the statutory factors (see Domestic Relations Law § 236 [B] [6] [a] [1]-[11]) – in particular the duration of the marriage, the age and health of the parties, and the likelihood, as noted by the court, that the disparity between their incomes will persist – we find that the

-7-                                502299

amount of the maintenance award must be increased to $20,000 annually, to continue until 2016 as established by Supreme Court. "Such an award 'will better serve the primary goal of maintenance, which is to encourage rehabilitation and self-sufficiency to the extent possible, while still accounting for a large discrepancy in earning power between the parties'" (Schwalb v Schwalb, 50 AD3d 1206, 1210 [2008], quoting Semans v Semans, 199 AD2d 790, 792 [1993], lv denied 83 NY2d 758 [1994]). An appropriate adjustment should further be made in the value of the life insurance policy that the husband was directed to obtain to secure this obligation. As with child support, the maintenance award should be retroactive to the date of the wife's first application, with credit for payments made (see Domestic Relations Law § 236 [B] [6] [a]; White v White, 204 AD2d at 828-829).

The wife further objects to various aspects of the equitable distribution award. With respect to the parties' real property, the wife argues that the postjudgment orders should have conveyed all of the real estate to her to enable her to use the income from the rental properties to finance her ownership of the mortgage-encumbered marital residence. However, the postjudgment orders present a more fundamental problem, in that they purport to modify the judgment's equitable distribution award based on changes in circumstances that took place after the judgment was entered. While the law permits modification of child support and maintenance awards (see Domestic Relations Law § 236 [B] [9] [b]), there is no comparable provision allowing modification of equitable distribution awards. Thus, "'a distributive award pursuant to [Domestic Relations Law] section 236 (B) (5) (e), once made, is not subject to change'" (Welsh v Lawler, 282 AD2d 977, 979 [2001], quoting O'Brien v O'Brien, 66 NY2d 576, 591 [1985] [Meyer, J., concurring]; see Farsace v Farsace, 97 AD2d 951, 952 [1983]). "Indeed, permitting the modification of the equitable distribution provisions of a judgment of divorce 'would effectively undermine the finality of [matrimonial] judgments'" (Welsh v Lawler, 282 AD2d at 979, quoting Siegel v Siegel, 132 AD2d 247, 254 [1987], lv dismissed 71 NY2d 1021 [1988], lv denied 74 NY2d 602 [1989]).

-8-                               502299

Here, Supreme Court's stated objective in modifying the real property distribution was to limit the diminution of the marital estate caused by the parties' ongoing refusal to comply with the original distribution.[3]  Although the goal was laudable, the court lacked the power to accomplish it by modifying the original distribution.  Accordingly, both postjudgment orders must be set aside.  Supreme Court's original direction with regard to the real estate will not be disturbed, since it was soundly based on full consideration of the statutory factors (see Domestic Relations Law § 236 [B] [5] [d]) and well within the court's "substantial discretion" (Farrell v Cleary-Farrell, 306 AD2d 597, 599 [2003]).

Next, the wife challenges Supreme Court's distribution of the parties' enhanced earning capacities resulting from the degrees they acquired during the marriage.  The court accepted the opinion of the court-appointed evaluator that the value of the wife's undergraduate degrees was $149,000, and awarded 15% of that amount to the husband.  As to the husband, however, the court disagreed with the evaluator's determination that his degree was worth $496,000, and instead determined that its value was zero.[4]  The wife challenges both determinations.

We find, first, that Supreme Court erred in awarding a percentage of the value of the wife's degrees to the husband.  To be entitled to a share of these assets, the husband was required to show not only that the degrees had enhanced the wife's earning capacity, but also that "[he], in a meaningful and substantial way, contributed to [her] efforts in obtaining [them]" (Evans v Evans, 55 AD3d at 1080).  The court made no finding that the husband had made such a contribution and, indeed, such a finding would not have been supported by the record.  The wife's uncontradicted testimony was that she obtained both of her

---

[3]  For example, foreclosure proceedings were pending against the marital residence.

[4]  The evaluator noted that the husband took the position that his degree had no value because he would have attained the same position without it.

-9-                    502299

degrees through night and weekend courses while working full time for employers that reimbursed all of her expenses for tuition and books. There was no evidence that any unreimbursed marital funds were expended or that the husband made any efforts to assist the wife in obtaining either degree that went beyond "overall contributions to the marriage" (Carman v Carman, 22 AD3d 1004, 1007 [2005]). Thus, the husband did not meet his burden to establish that the degrees resulted from anything other than the wife's "own ability, tenacity, perseverance and hard work" (Evans v Evans, 55 AD3d at 1081), and he was not entitled to share in their value. Further, the record does not support the court's determinations that the degrees had enhanced the wife's earnings or, if they had, of the value of the enhancement. For example, there was no record support for the finding that the degrees had continued to augment her income after 1993. Further, the valuation placed on the degrees was based on Grand's assessment of the wife's salary potential, which, as previously noted, is unavailable for review (see Semans v Semans, 199 AD2d at 791).

On the other hand, Supreme Court's determination that the husband's engineering degree did not enhance his earning capacity was supported by the record, including the husband's testimony and documentation from his employer, and was not an abuse of its discretion (see Evans v Evans, 55 AD3d at 1080; Halaby v Halaby, 289 AD2d 657, 660 [2001]; McAlpine v McAlpine, 176 AD2d 285, 286-287 [1991]). While the court-appointed evaluator reached a different conclusion, "it was for [the court] to evaluate this testimony, assign to it whatever weight the court believed it deserved and arrive at determinations that were supported by the credible evidence introduced at trial" (Evans v Evans, 55 AD3d at 1080).

We have examined the wife's remaining contentions and find them to be without merit.

Mercure, J.P., Kavanagh, Stein and McCarthy, JJ., concur.

-10-                        502299

ORDERED that the judgment is modified, on the law and the facts, without costs, by reversing so much thereof as awarded 15% of the value of defendant's enhanced earning capacity to plaintiff, directed defendant to pay a pro rata share of the cost of the children's health insurance premiums, and awarded child support based on an imputed income to defendant of $50,000 annually; plaintiff is directed to pay maintenance in the amount of $20,000 annually, retroactive to the date of defendant's first application therefor, and to pay the full cost of the children's health insurance; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

ORDERED that the order entered July 13, 2007 is modified, on the law, without costs, by reversing so much thereof as partially granted plaintiff's motion; motion denied in its entirety; and, as so modified, affirmed.

ORDERED that the order entered January 29, 2008 is reversed, on the law, without costs.

ENTER:

*[signature]*

Michael J. Novack
Clerk of the Court